IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROMARIS WALTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 21-cv-1042-NJR |
| | ) |
| **WARDEN BROOKHART, LT.** | ) |
| **LIVINGSTON, C/O GIPSON, DAN** | ) |
| **DOWNEN, DARREN WILLIAMS, and** | ) |
| **SHAWN OCHS,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Romaris Walton, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Sheridan Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence Correctional Center ("Lawrence"). In his Complaint (Doc. 1), Walton alleges he was subjected to an improper pat down procedure. He also alleges that he was denied an unbiased fact finder in a disciplinary hearing. He seeks monetary and injunctive relief, including having his disciplinary ticket expunged.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which

relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Walton makes the following allegations in the Complaint (Doc. 1): On January 25, 2020, during a pat down of inmates working in the dietary, Correctional Officer ("C/O") Gipson groped Walton's genitals repeatedly, groped his buttocks, and ordered Walton to raise his shirt above his navel so that Gipson could pull his pants and boxers away from his waist and expose his genitals (*Id.* at p. 10). Walton contends that he felt sexually violated by Gipson's actions and reported the event to the prison. He describes the contact as sexually intrusive and without a penological purpose. Lieutenant ("Lt.") Livingston was also present during the pat down but failed to protect Walton or stop Gipson's "voyeurism practices" (*Id.* at p. 9).

After reporting the incident, he was placed "under the authority" of Livingston from March 3, 2020 to March 19, 2020 and "under the authority" of Gipson from April 6, 2020 to June 4, 2020 (*Id.* at p. 10). Walton alleges that they worked in the same cellhouse that Walton was housed in during those timeframes (*Id.*). Being near the individuals caused Walton trauma and humiliation as well as fear that Gipson would inappropriately touch him again (*Id.*). He believes that this was done by the institution in retaliation for Walton filing an incident report pursuant to the Prison Rape Elimination Act (P.R.E.A.) on the two individuals.

On February 23, 2020, Walton called the P.R.E.A. hotline to report that Gipson and Livingston still had access to him (*Id.* at p. 10). Two hours later, he was taken to

segregation because words in his hotline call were taken out of context and construed as a threat (*Id.*). He was charged with intimidation of threats (*Id.*). No shift review signature was on the ticket. He alleges that Darren Williams, head of the adjustment committee, improperly heard the ticket and found him guilty. Walton had a pending lawsuit against Williams at the time of the ticket hearing and he was biased towards Walton (*Id.* at p. 9). Brookhart was aware of Williams's bias because she has previously been a party to the same lawsuit and knew that the lawsuit was pending against Williams, yet she still allowed him to proceed as chairperson of the adjustment committee (*Id.*). She also signed the report agreeing with the findings (*Id.*). Downen also falsified information by stating on a response to Walton's grievance that the P.R.E.A. findings are not grievable (*Id.* at p. 10). Walton was found guilty of the charge and received 2 months C-grade, Audio/Video restrictions, and was transferred. He also served nine days in segregation while awaiting the hearing (*Id.*).

Dan Downen, P.R.E.A. compliance manager, failed to ensure that policies and practices were followed in response to Walton writing a P.R.E.A. grievance and calling the hotline (*Id.* at p. 9). Downen allowed Gipson and Livingston to have access to Walton while the investigation was ongoing (*Id.*). Livingston was allowed to perform a shakedown of Walton in the dietary on February 22, 2020, prompting Walton's call to the hotline (*Id.*).

### Preliminary Dismissals

Walton brings a number of allegations that fail to state a claim. For instance, Walton identifies Shawn Ochs in the caption of his Complaint but fails to include any

allegations against him in the statement of his claim. As there are no allegations suggesting a constitutional violation by Ochs, he is **DISMISSED without prejudice**.

Walton's Complaint also alleges that he was retaliated against by being placed in areas where Livingston and Gipson were working while the P.R.E.A. investigation into their actions was ongoing. But Walton fails to identify any individual associated with these allegations. He merely states the "institution" placed him near Livingston and Gipson either for retaliatory reasons, to humiliate him, or to provoke him to attack the officers. He earlier alleged that Downen allowed Livingston to have access to him during the investigation by allowing Livingston to conduct pat downs of dietary workers, which included Walton (*Id*. at p. 9). But he fails to allege that Downen acted with retaliation. He merely alleges that Downen violated P.R.E.A. policies and practices during the investigation. The violation of policies and practices, however, does not state a claim. *See Scott v. EdinBurg*, 346 F.3d 752, 760 (7th Cir. 2003) (noting that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and…practices"). Thus, claims of retaliation and the claim against Downen for violating policies and practices are **DISMISSED without prejudice**.

Further, to the extent Walton alleges Downen mishandled his grievance by falsely stating that the P.R.E.A. findings are not grievable, Walton also fails to state a claim. The mishandling or denying of grievances by those not personally involved in the underlying constitutional violation does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise

4

did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following three counts:

> **Count 1:** **Eighth Amendment claim against Gipson for the improper pat down that was sexually intrusive and without penological purpose.**
>
> **Count 2:** **Eighth Amendment failure to protect claim against Livingston for failing to stop the improper pat down.**
>
> **Count 3:** **Fourteenth Amendment due process claim against Williams and Brookhart for conducting an impartial disciplinary hearing.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Walton states Eighth Amendment claims against Gipson in Count 1 and Livingston in Count 2.

As to Count 3, however, Walton fails to state a due process claim. To state a Fourteenth Amendment claim, Walton must sufficiently allege that he was deprived of a

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court analyzing such a claim in the context of inmate disciplinary actions must consider (1) whether there was a protected interest at stake that necessitated due process protections and (2) whether the Disciplinary proceedings were conducted in accordance with procedural due process requirements. *Id*. at 125-26. But Walton fails to allege a protected liberty interest sufficient to warrant due process protections. An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Neither the C grade, audio/video restrictions, or transfer constitutes the deprivation of a liberty interest. *Thomas v. Ramos*, 130 F.3d 754, 762 n. 8 (7th Cir. 1997) (collecting cases). Further, Walton did not receive segregation as part of his punishment. He does allege that he spent nine days in segregation prior to receiving the results of the hearing and his sentence, but he has no due process right in pre-hearing, investigative segregation. *Thomas*, 130 F.3d at 761; *Holly v. Woolfolk*, 415 F.3d 678, 681 (7th Cir. 2005). Accordingly, Count 3 is **DISMISSED without prejudice**.

## Pending Motions

As to Walton's motion for counsel (Doc. 3), he states that he has sent letters to multiple law firms and he does not understand legal terms and issues. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil

6

the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, counsel is not needed at this time because the defendants have not yet been served and a discovery schedule has not been entered. Thus, Walton's motion for counsel (Doc. 3) is **DENIED**. He may renew his request for counsel at a later date.

Walton also recently filed a letter with the Court requesting an investigation against the law library clerk at Lawrence (Doc. 16). Walton maintains that she interfered with his access to the courts. The law library clerk, however, is not a defendant in this case nor does his Complaint allege any violations by the law library. If Walton wishes to pursue such claims, he must file a new lawsuit after first exhausting his administrative remedies.

## Disposition

For the reasons stated above, Count 1 shall proceed against C/O Gipson. Count 2 shall proceed against Livingston. Count 3 as well as Warden Brookhart, Dan Downen, Darren Williams, and Shawn Ochs are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants C/O Gipson and Lt. Livingston: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

employment as identified by Walton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Walton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Walton, and the judgment includes the payment of costs under Section 1915, Walton will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Walton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  **January 21, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**